# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN OSBORNE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:19-cv-00307 |
| v. | ) | |
| | ) | |
| EMPLOYEE BENEFITS | ) | |
| ADMINISTRATION BOARD OF | ) | |
| KRAFT HEINZ, et al., | ) | |
| | ) | |
| Defendants. | | |

| | | |
|---|---|---|
| | ) | |
| In re KRAFT HEINZ SHAREHOLDER | ) | 2:19-cv-00549 |
| DERIVATIVE LITIGATION | ) | |
| | ) | |
| | ) | |
| | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

On February 21, 2019, Kraft Heinz Food Company ("Kraft Heinz") announced certain accounting adjustments and revealed the existence of a U.S. Securities and Exchange Commission ("SEC") investigation. (No. 19-307, Am. Compl., ECF No. 45, ¶¶ 2–5; No. 19-549, Am. Compl., ECF No. 29, ¶¶ 9–10.) Twelve (12) lawsuits followed in four (4) different courts, each alleging that the Defendants are liable because they disseminated, approved, or failed to correct allegedly false and/or misleading statements regarding Kraft Heinz's internal controls, its compliance with SEC regulations, and the value of its goodwill and intangible assets.

This Court is presiding over five (5) such matters: (1) an Employee Retirement Income Security Act ("ERISA") action at No. 19-307; and (2) four (4) shareholder derivative suits,

which are consolidated at No. 19-549. Currently before the Court are two (2) Motions to Transfer, one (1) filed by the ERISA Defendants, and the other filed by the Defendants in the consolidated shareholder derivative suit.[1] (No. 19-307, Defs.' Mot. to Transfer Venue to the Northern District of Illinois, ECF No. 50; No. 19-549, Defs.' Mot. to Transfer Venue to the Northern District of Illinois, ECF No. 30.)

Defendants' Motions seek "to bring order to all of this litigation" and request that this Court "transfer the cases pending before it to the United States District Court for the Northern District of Illinois, which is the locus of the center of gravity of these claims, and where the first-filed actions are pending." (No. 19-307, Def.'s Mem. of Law in Supp. of Mot. to Transfer Venue, ECF No. 51, at 1–2.) That resolution, the Defendants argue, would allow for the federal cases to be adjudicated in one (1) forum in an efficient and consistent manner. (*Id.* at 2.)

The ERISA Plaintiffs, on the other hand, oppose transfer to Chicago because litigation in Pittsburgh "simply makes sense." (No. 19-307, Pls.' Resp. in Opp'n to Defs.' Mem. of Law in Supp. of Mot. to Transfer Venue, ECF No. 56, at 1.) Not only is the Plan administered in Pittsburgh, but all of the Plan's assets are held within a trust account administered in Pittsburgh, and, most importantly, Pittsburgh is the ERISA Plaintiffs' chosen forum. (*Id.*)

Similarly, the derivative Plaintiffs argue that Pittsburgh is the proper forum for "obvious" reasons: (1) public SEC filings list Pittsburgh as the Company's corporate headquarters; and (2) an individual Plaintiff resides in Pittsburgh. (No. 19-549, Pls.' Resp. in Opp'n to Defs.' Mot. to Transfer Venue to the Northern District of Illinois, ECF No. 38, at 3.)

The Court has reviewed all briefing in support or opposition of the Defendants' Motions to Transfer and will grant the Motions for the reasons stated below.

---

[1] The Motions to Transfer, and the Defendants' briefing in support of such, are identical. Therefore, throughout this Opinion, the Court will only cite to the Defendants' briefing in support of the Motion to Transfer at No. 19-307.

# I. BACKGROUND

## A. Kraft Heinz's Chicago and Pittsburgh Offices

Kraft Heinz was formed in 2015, when, through a series of transactions, Kraft Foods Group, Inc., headquartered in Chicago, merged with and into Kraft Heinz Foods Company (f/k/a H.J. Heinz Company), headquartered in Pittsburgh. (No. 19-307, Decl. of Anna Oliveira in Supp. of Def.'s Mot. to Transfer Venue, ECF No. 52, ¶ 5.) The Company is co-headquartered in two (2) locations: Chicago (the historical headquarters of Kraft) and Pittsburgh (the historical headquarters of Heinz). (*Id.* ¶ 6.)

The Chicago headquarters is Kraft Heinz's largest office nationwide, with approximately 1,400 employees working out of that office. (*Id.* ¶ 7.) In addition, the Chicago office serves as the home base for the Company's officers and several senior executives, including the Chief Executive Officer, Chief Financial Officer, Chief Business Planning and Development Officer, and Principal Accounting Officer and Global Controller, all of whom are Defendants in the actions pending before this Court. (*Id.* ¶ 8.)

And, central to the matters before this Court, the Kraft Heinz employees responsible for preparing, reviewing, certifying, and approving the Company's regulatory filings, press releases, and statements on earnings calls from 2017 to 2019 largely performed their work out of the Chicago Office. (*Id.* ¶ 14.) The Company's investor relations team, which is based in Chicago, is responsible for drafting earnings-related press releases and talking points for earnings calls with investors and analysts, with input from a Chicago-based individual on the Corporate Affairs team. (*Id.*) The Company's Senior Vice President of Corporate Affairs, who currently resides in Pittsburgh, also reviews those materials. (*Id.*)

In contrast, employees based at Kraft Heinz's Pittsburgh co-headquarters focus on

activities related to supply chain planning, sales and operations planning, human resources, and information technology. (*Id.* ¶ 9.)

## B. **The Lawsuits**

On February 21, 2019, Kraft Heinz announced, among other things, impairment charges to its goodwill accounting for intangible assets, an SEC subpoena regarding accounting practices in the Company's procurement function, and a reduction in the Company's quarterly dividend from $0.625 per share to $0.40 per share. (No. 19-307, ECF No. 45, ¶¶ 72–74.) Several lawsuits ensued, all of which claim that the Defendants are liable for disseminating or approving false and/or misleading statements in regulatory filings, press releases, and on earnings calls concerning the adequacy of the Company's internal controls, its compliance with SEC regulations, and the value of its goodwill and intangible assets.

### 1. **The Chicago Actions**

The first-filed of the remaining lawsuits,[2] *Hedick v. Kraft Heinz Co.*, No. 19-1339 (N.D. Ill.), is a shareholder class action that was filed in the United States District Court for the Northern District of Illinois (the "Chicago Court") on February 24, 2019. Two (2) substantially similar actions were later filed in that same District and were consolidated with *Hedick* on October 8, 2019: (1) *Iron Workers Dist. Council (Phila. and Vicinity) Ret. & Pension Plan v. Kraft Heinz Co.*, No. 19-1845 (N.D. Ill.); and (2) *Timber Hill LLC v. Kraft Heinz Co.*, No. 19-2807 (N.D. Ill.). (No. 19-1339, Order, ECF No. 149.)

### 2. **The Pittsburgh Actions**

Then, participants in certain Kraft Heinz retirement plans filed a lawsuit in this Court on March 19, 2019, alleging violations of ERISA. That matter, *Osborne v. Emp. Benefits Admin.*

---

[2] *Walling v. Kraft Heinz Co.*, No. 19-214 (W.D. Pa.), was filed on February 26, 2019, and was voluntarily dismissed on April 26, 2019.

*Bd. of Kraft Heinz*, is currently pending at No. 19-307.

Lastly, five (5) shareholder derivative lawsuits were also filed in the Western District of Pennsylvania: (1) *DeFabiis v. Hees*, No. 19-433 (W.D. Pa.) was filed on April 16, 2019; (2) *Vladimir Gusinsky Revocable Tr. v. Hees*, No. 19-549 (W.D. Pa.) was filed on May 8, 2019; (3) *Kailas v. Hees*, No. 19-567 (W.D. Pa.) was filed on May 13, 2019; (4) *Silverman v. Behring*, No. 19-574 (W.D. Pa.) was filed on May 15, 2019; and (5) *Green v. Behring*, No. 19-613 (W.D. Pa.) was filed on May 23, 2019. Two (2) of those shareholders (those in *DeFabiis* and *Kailas*) voluntarily dismissed their cases in the Western District of Pennsylvania and one of them (*DeFabiis*) refiled in the United States District Court for the Southern District of New York, voluntarily dismissed there, again, and then refiled in the Delaware Chancery Court.[3] The three (3) remaining shareholder derivative suits were consolidated at No. 19-549, which is currently pending before this Court. (No. 19-549, Order, ECF No. 20.)

### C. The Motions to Transfer

Now, the Defendants in the matters pending before this Court (the only federal matters not before the Northern District of Illinois) seek to transfer those actions from this Court to the Chicago Court. (No. 19-307, ECF No. 50; No. 19-549, ECF No. 30.) Those Motions have been fully briefed and are ripe for disposition.

## II. LEGAL STANDARD

Our Circuit provides two (2) mechanisms by which a district court may consider a motion to transfer: (1) 28 U.S.C. § 1404(a); and (2) the "first-filed" rule.

### A. 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer a civil action to another district where the case might have been brought, . . . for the convenience of the parties and

---

[3] *DeFabiis* is now pending before the Delaware Court of Chancery at No. 2019-0587-AGB.

witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)). Ultimately, the district court retains broad discretion to determine whether or not transfer is appropriate. *In re United States*, 273 F.3d 380, 387 (3d Cir. 2001) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

In considering a motion to transfer under § 1404(a), district courts in our Circuit apply a two-part inquiry. First, as required by § 1404(a), a court must determine whether the action could have been originally brought in the transferee forum (i.e., whether venue in the transferee district is proper). Then, in addition to considering the factors enumerated by § 1404(a), a court should apply the balancing test set forth by the Third Circuit in *Jumara*, which requires district courts to weigh a number of public and private interests in order to determine whether the transferee forum "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 467 (D. Del. 2013).

The private interests to be balanced relate to § 1404(a)'s concern for "the convenience of the parties and witnesses" and may include the following: (1) the plaintiff's original choice of forum; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of any relevant records or files, limited to the extent that the files could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879.

By contrast, the public interests to be balanced are not necessarily tied to the parties, but instead derive from § 1404(a)'s consideration of "the interests of justice" and may include the

following: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in each of the fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879–80.

District courts are to consider both the public and private factors to determine, on balance, whether the litigation would "more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, et al., *Federal Practice & Procedure*, § 3847 (2d ed. 1986)). And the Court should keep in mind that "[t]he purpose of transferring venue under § 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 11-1338, 2013 WL 1180312, at *24 (W.D. Pa. Mar. 20, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

At each step of the transfer inquiry, the moving party bears the burden of demonstrating that transfer of venue is appropriate and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

**B.**   **The Third Circuit's "First-Filed" Rule**

Our Circuit has also adopted the first-filed rule, which "gives a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Equal Emp't Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *see also Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d

Cir. 1941) ("In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it.") (quoting *Smith v. McIver*, 22 U.S. 532, 535 (1824)). The rule "permits courts to consolidate similar cases by transferring later-filed cases for consolidation with the first-filed case." *Emps.' Ret. Sys. of City of St. Petersburgh, Fla. v. Teva Pharm. Indus. Ltd.*, No. 19-2711, 2019 WL 5485549, at *3 (E.D. Pa. Oct. 8, 2019).

The Third Circuit has not clarified the degree of similarity required under the rule. However, several district courts within our Circuit have found that "a flexible approach . . . more fully meets the purposes of the first-filed rule." *Id.* (citing *Law Sch. Admission Council, Inc. v. Tatro*, 153 F. Supp. 3d 714, 724 (E.D. Pa. 2015); *see also Chavez v. Dole Food Co.*, 836 F.3d 205, 216 (3d Cir. 2016) ("[T]he first-filed rule is grounded on equitable principles and requires district court judges to fashion a flexible response to the issue of concurrent jurisdiction."). Under the flexible approach, the first-filed rule "applies to cases that are substantially similar." *Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015).

In other words, "the applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Emps.' Ret. Sys. of City of St. Petersburgh, Fla.*, 2019 WL 5485549, at *3. The "substantive touchstone of the first-to-file inquiry is subject matter." *Id.* (quoting *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 409 (E.D. Pa. 2008)).

Simply put, substantial overlap in subject matter between two (2) separate actions is significant in terms of determining whether or not an action should be transferred under the first-filed rule. *Equal Emp't Opportunity Comm'n*, 850 F.2d 969, 971 (3d Cir. 1988) ("[T]he court which first has possession of the subject must decide it."); *see also Ivy-Dry, Inc. v. Zanfel Labs.,*

*Inc.*, No. 08-4942, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) ("[A] plain reading of the Third Circuit's opinion in *EEOC* strongly suggests that whether the cases share subject matter is more important than the absolute identity of the parties.").

However, even if transfer is warranted under the first-filed rule, the Court may retain jurisdiction of a later-filed action if faced with "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Equal Emp't Opportunity Comm'n*, 850 F.2d at 972.

## III. <u>DISCUSSION</u>

The Court finds that it is appropriate to consider the Defendants' Motions to Transfer under both the § 1404(a) transfer analysis and the Third Circuit's first-filed rule. For the reasons stated below, both standards weigh in favor of transferring the actions at No. 19-307 and No. 19-549 to the United States District Court for the Northern District of Illinois.

### A. <u>The Propriety of the Transferee Forum</u>

As noted above, a district court may only transfer an action to a "district or division where it might have been brought" originally. 28 U.S.C. § 1404(a). Accordingly, the Court may only transfer the actions at No. 19-307 and No. 19-549 to the Chicago Court if venue would have been proper in that District initially and if that Court could have exercised personal and subject matter jurisdiction over each action.

Here, the Defendants argue, and (importantly) the Plaintiffs offer no argument to the contrary, that venue in the Northern District of Illinois is proper. (No. 19-307, ECF No. 51, at 7.) And the Court agrees that both actions could have originally been filed in the Northern District of Illinois.

The action at No. 19-307 was brought pursuant to Section 502 of the Employee Retirement Income Security Act, 29 U.S.C. § 1132. (No. 19-307, ECF No. 45, at ¶ 1.) According

to that provision, venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). The record in this case is clear that nearly all individual Defendants are located in Chicago. (No. 19-307, ECF No. 52, ¶¶ 8, 13, 18.) Thus, venue is proper in the Northern District of Illinois regarding the ERISA action.

The action at No. 19-549 alleges violations of: (1) Sections 10(b), 21D, and 14(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78u-4, and 78n(a); (2) SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; and (3) state law fiduciary duties. (No. 19-549, ECF No. 29, ¶¶ 139–60.) Claims alleging violations of the Securities Exchange Act may be brought in a district where a defendant resides or is found, among other things. *In re: USA Techs., Inc. Securities Litigation*, No. 18-13759, 2019 WL 4785780, at *2 (D.N.J. Sept. 20, 2019). As stated above, nearly all individual Defendants are located in Chicago. (No. 19-307, ECF No. 52, ¶¶ 8, 13, 18.) And pendent venue would then exist over both the SEC Rule 10b-5 claim and the state law claim, regardless of whether or not proper venue could have been established as to each claim individually, because all claims at issue "arise out of the same operative facts." *High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp 2d 487, 493 (M.D. Pa 2005). Thus, venue is proper in the Northern District of Illinois regarding the consolidated shareholder derivative action.

Likewise, the Chicago Court would have had jurisdiction over each suit if initially filed there. The Company's presence in Illinois, as well as that of the individual Defendants, establishes personal jurisdiction; subject matter jurisdiction would have existed over each federal claim pursuant to 28 U.S.C. § 1331; and supplemental jurisdiction would apply to the state law claims pursuant to 28 U.S.C. §1367.

Therefore, because both venue and jurisdiction are proper in the Northern District of

Illinois, the Court concludes that the actions at No. 19-307 and No. 19-549 could have been originally brought in the proposed transferee forum and will thus proceed to the second step of the transfer analysis.

**B. The *Jumara* Factors**

Next, the Court must balance the various public and private interests set forth by the Third Circuit in *Jumara*. After doing so, and for the reasons stated below, the Court concludes that the factors weigh strongly in favor of transferring both cases to the Northern District of Illinois.

**1. Private Interests – Convenience of the Parties and Witnesses**

In assessing the private interests at stake, the Court is to consider "the convenience of the parties and witnesses." *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (citing 28 U.S.C. § 1404(a)). On balance, the Court finds that the private interests weigh in favor of transferring both cases to the Northern District of Illinois.

**i. Plaintiffs' Forum Preference**

First, the Court is to consider the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. Both the derivative Plaintiffs and the ERISA Plaintiffs, obviously, prefer the district where the action was originally filed—the Western District of Pennsylvania.

Generally, the plaintiff's choice of forum should "not be lightly disturbed." *Id.* An individual plaintiff's forum preference, however, is entitled to little weight in a shareholder derivative suit or in a class action. *See Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 677 (E.D. Pa. 2019) ("[W]here there are hundreds of potential plaintiffs . . . the claim of any one

plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

Here, there is no indication that the derivative Plaintiffs have any particular personal interest that would entitle their choice of forum to special weight. The best that the Plaintiffs are able to provide on this front is an assertion that "at least one of the Plaintiffs resides in Pittsburgh." (No. 19-549, ECF No. 38, at 2.) However, that resident is only "generally familiar with the concerns and allegations in the complaint." (No. 19-549, ECF No. 40, ¶ 4.) And, as far as the Court can tell, that individual Plaintiff will not be significantly inconvenienced if the litigation were to proceed in another forum because, given the nature of a shareholder derivative suit, it is unlikely that he would be called to testify at trial or otherwise required to actively participate in any other substantive proceedings. *See In re Amkor Tech., Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (stating that "the nominal plaintiff's role in [a class or shareholder derivative action] is likely to be quite minimal."). Consequently, the derivative Plaintiffs' choice of forum, while weighing against transfer, is not entitled to significant deference.

And the ERISA Plaintiffs (who filed their Complaint as a class action "on behalf of themselves and other similarly situated current and former employees of Kraft Heinz Food Company") likewise fail to identify any particular personal interest that would entitle their choice of forum to special weight. (No. 19-307, ECF No. 45, at 1.) Plaintiffs' only stated interest is that the Plan itself is administered in Pennsylvania.[4] Therefore, the ERISA Plaintiffs' choice of forum, while weighing against transfer, is not entitled to significant deference.[5]

---

[4] Plaintiffs argue that their choice of forum should receive heightened deference simply because the claims at issue revolve around ERISA. (No. 19-307, ECF No. 56, at 7.) However, Plaintiffs concede that such a result has not yet been mandated by the Third Circuit. And, as the United States Supreme Court held, a plaintiff's forum preference in a class action, like the one brought by the ERISA Plaintiffs, is considerably weakened. *Koster*, 330 U.S. at 524; *see*

Thus, as to both the derivative and ERISA Plaintiffs, the first *Jumara* factor generally weighs against transfer, but will be afforded little deference because of the communal nature of each action.

### ii. **Defendants' Forum Preference**

The Defendants, on the other hand, prefer that the case be transferred to the Northern District of Illinois. The gist of their argument is that transfer would bring all related actions before one (1) federal district court, which would allow for the cases to be resolved in a consistent and efficient manner. (No. 19-307, ECF No. 51, at 1–2.) Notwithstanding the "common sense" nature of this factor, it is, however, generally afforded little deference. As such, the Court will count this factor in favor of transfer but is obligated to only consider it incrementally.

### iii. **Where the Claim Arose**

The third factor the Court is to consider is whether or not "the claim arose elsewhere." *Jumara*, 55 F.3d at 879. "This consideration focuses on where the activities relevant to the claims at issue took place." *Stillwagon*, 2013 WL 1180312, at *26 (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (the "locus of the alleged culpable conduct" determines the place where the claim arose)). "More specifically, in the context of claims based on misrepresentations or omissions, misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received." *Panitch v.*

---

*also In re Amkor Tech.*, 2006 WL 3857488, at *3 ("[T]he weight accorded to plaintiff's choice of forum is considerably reduced in class and derivative actions, where each of many potential plaintiffs may claim the right to have the action heard in his home forum, and where the nominal plaintiff's role in the litigation is likely to be quite minimal.").

[5] In addition, the ERISA Plaintiffs appear to insinuate that a forum-selection clause applies in this instance. (*See* No. 19-307, ECF No. 56, at 7–8.) The Court, however, agrees with the Defendants' position that Plaintiffs' Response conflates a choice-of-law provision with a forum-selection clause. (See No. 19-307, ECF No. 58, at 9–10.)

*Quaker Oats Co.*, No. 16-4586, 2017 WL 1333285, at \*6 (E.D. Pa. Apr. 5, 2017) (quoting *Palagano*, 2015 WL 5025469, at \*5).

Here, the Defendants argue that all activities relevant to the claims at issue occurred in Chicago—not Pittsburgh. (No. 19-307, ECF No. 51, at 11.) At the heart of both the ERISA action and the shareholder derivative suit is the fact that "Kraft Heinz and its officers and employees are alleged to have made, approved, or failed to correct misrepresentations or omissions in regulatory filings, press releases, and on earnings calls regarding internal controls, goodwill and intangible asset impairment accounting, and procurement issues, or failed to adequately oversee those accounting functions." (*Id.* at 11–12.) And, as the Defendants argue, any such conduct was carried out by employees located almost entirely in Chicago. (ECF No. 52, at ¶¶ 8, 14.)

In other words, the Defendants assert that it is irrelevant that Kraft Heinz maintains a second headquarters in Pittsburgh, or that the Company's SEC filings list Pittsburgh as the location of Kraft Heinz's Principal Executive Offices. Rather, the Defendants urge the Court to focus on the location in which the events at issue arose. And here, because each suit revolves around alleged misrepresentations and/or omissions that occurred in Chicago, the claim necessarily arose in that same city. (ECF No. 51, at 13 (citing *In re Amkor Tech.*, 2006 WL 3857488, at \*5, which transferred a securities case involving a company with Pennsylvania offices because "the vast majority of events and public statements alleged in the Complaint occurred or were made in Arizona from the Company's Arizona Headquarters").)

Plaintiffs, on the other hand, disagree. The derivative Plaintiffs argue that Kraft Heinz is co-headquartered in Pittsburgh, the Company's annual shareholder meeting is held in Pittsburgh, and the Company also maintains close ties with the larger Pittsburgh community, including

primary sponsorship of the Pittsburgh Pickle festival known as "PicklesBurgh." (No. 19-549, ECF No. 38, at 7.)

The derivative Plaintiffs, however, fail to allege that any misstatements or omissions occurred in Pittsburgh, or that any of the senior executives or accounting personnel responsible for such statements carried out their relevant duties in Pittsburgh, or that any alleged wrongful conduct had its locus here. At best, Plaintiffs brief verifies that venue is proper in Pittsburgh. However, that fact is immaterial to where the claims at issue arose. And, because venue can be proper in multiple districts, confirming that venue is proper in Pittsburgh doesn't foreclose transfer to Chicago, where venue is also proper.

The ERISA Plaintiffs don't fare much better. Their main argument on this prong is that the Kraft Heinz Savings Plan maintains a Pittsburgh address and, as a result, the conduct of the fiduciary Defendants "necessarily occurred in Pennsylvania . . . regardless of where [they] were physically located." (No. 19-307, ECF No. 56, at 8.)

However, "when [an ERISA] plaintiff alleges only a breach of fiduciary duty, rather than makes a claim for benefits due, the breach is considered to have occurred where defendants acted or failed to act as their duties required." *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *see also Wright v. Elton Corp.*, No. 16-329, 2017 WL 1035830, at *4 (D. Md. Mar. 17, 2017) (holding that "the place where the breach occurred was where defendants acted or failed to act as their duties required" in an ERISA case claiming only breach of fiduciary duty); *McFarland v. Yegen*, 699 F. Supp. 10, 13 (D.N.H. 1988) ("A breach of fiduciary duties . . . can occur only where the defendants commit or fail to commit the actions that their duties require.").

Here, the claimed breach occurred when the Defendants allegedly made, approved, or failed to correct misrepresentations or omissions in regulatory filings, press releases, and on earnings calls. (No. 19-307, ECF No. 45, ¶¶ 8–12; No. 19-549, ECF No. 29, ¶ 69.) And all signs point to any such actions occurring in Chicago. (*See* No. 19-307, ECF No. 52.) The Company's officers and several senior executives are based in Chicago. (*Id.* ¶ 8.) The Kraft Heinz employees responsible for preparing, reviewing, certifying, and approving the Company's regulatory filings, press releases, and statements on earnings calls from 2017 to 2019 largely performed their work out of the Chicago Office. (*Id.* ¶ 14.) And the Company's Chicago-based investor relations team is responsible for drafting earnings-related press releases and talking points for earnings calls with investors and analysts, with input from a Chicago-based individual on the Corporate Affairs team. (*Id.*) The ERISA Plaintiffs do not dispute the above-listed facts, nor do they provide evidence that the Defendants made, approved, or failed to correct misrepresentations or omissions while in Pittsburgh.

In sum, the Defendants have presented strong arguments that the claims at issue in both cases arose in Chicago, to which the Plaintiffs failed to provide any convincing counter arguments. As such, this factor weighs very significantly in favor of transfer.

### iv.  Convenience of the Parties

Next, the Court is to consider "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Neither party provided argument as to this factor. However, the Court finds that this factor weighs in favor of transfer.

Although Kraft Heinz's financial resources likely exceed that of the Plaintiffs in either action, the burden imposed on the Company by litigating substantially similar claims in two (2) separate districts would be considerable. *See, e.g.*, *Panitch*, 2017 WL 1333285, at *7

("[R]equiring [the defendant] to defend materially identical suits in two districts would inevitably lead to duplication of voluminous discovery and documentary evidence, the burden of which would fall almost entirely on the company.").

The Court also considers the fact that the Plaintiffs in each action will have "little, if any, documentary evidence to contribute" at trial given the nature of each suit. *See Catanese v. Unilever*, 774 F. Supp. 2d 684, 690 (D.N.J. 2011) (finding the "convenience of parties" factor to weigh in favor of a company defending against multiple putative class action suits in various jurisdictions). As such, this factor weighs in favor of transfer.

### v. Convenience of the Witnesses

Fifth, the Court is to consider the convenience of the witnesses, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). In considering this factor, however, "the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses . . . who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012).

Here, no party has indicated that a party witness will be unable or unwilling to testify in either District. The Defendants, however, have noted that some third-party witnesses would be outside this Court's subpoena power. (No. 19-307, ECF No. 51, at 13.) "For example, the Company's auditors at [PricewaterhouseCoopers] perform their work out of the Company's

Chicago offices, and the relevant outside legal and financial advisors to the Company and the Board of Directors are based in either Chicago, New York, Boston, or Washington, DC." (*Id.*) That consideration tips the scale in favor of transfer. *See Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 661 (E.D. Pa. 2002) (granting transfer in part because the transferee forum would have power to compel process of key third-party witnesses).

### vi.  **Location of Documents**

Lastly, the Court must consider the location of any relevant records or files, to the extent that those materials may be unavailable in one forum or the other. *Jumara*, 55 F.3d at 879. Here, nothing in the record indicates that the relevant evidentiary materials would be unavailable in either Chicago or Pittsburgh. Thus, this factor remains relatively neutral, but for the reasons noted at the outset, the record before the Court is that all of the activities that were challenged in these actions allegedly occurred by individuals located in Chicago, doing their work in Chicago, so the natural and likely inference is that any documents relative to those things, to the extent they are paper rather than virtual, are in Chicago.

### vii.  **Conclusion**

On balance, the Court finds that the private *Jumara* factors weigh in favor of transferring both actions to the Northern District of Illinois. Chicago appears to be at the center of the action in all cases at issue. As such, transfer to that District would likely make litigation more convenient for a majority of the parties and witnesses involved. The Court will next consider the public factors.

### 2.  **Public Interests – Interests of Justice**

In balancing the public interests, the Court is to consider "the interest of justice," rather than focusing on the wants and needs of the parties. *In re: Howmedica Osteonics Corp.*, 867 F.3d

at 402. As with the private interests considered above, the Court also finds that the public interests weigh in favor of transferring both actions to the Northern District of Illinois.

### i. <u>Enforceability of the Judgment</u>

First, the Court is to consider whether or not shifting the litigation to the transferee forum would inhibit "enforceability of the judgment." *Jumara*, 55 F.3d at 879. Here, "it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *In re: Howmedica Osteonics Corp.*, 867 F.3d at 410 (quoting 1 James Moore, et al., *Moore's Manual: Federal Practice & Procedure*, § 7.81[3][b] (2017)). Thus, this factor remains neutral.

### ii. <u>Practical Considerations</u>

Second, the Court is to weigh "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. One such consideration is the avoidance of duplicative litigation in different fora. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). And our Circuit has found this to be a critical factor in the transfer analysis. *In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) ("Here, the most important factor is the avoidance of duplicative litigation: Adjudicating almost identical issues in separate fora would waste judicial resources."); *see also Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. Aug. 2, 1996) ("A strong public policy favors avoiding duplicative litigation in different fora. Where the parties and issues are the same, or similar, and another court is already familiar with the case, bringing related litigation together in one forum ensures that pretrial discovery may be conducted more efficiently, witnesses' time may be

conserved, public and parties' litigation expenses may be reduced, and inconsistent results can be avoided.") (internal citations omitted).

In addition, "courts in our district have held that where there is a strong likelihood of consolidation with a related action, a transfer of venue is warranted." *Panitch*, 2017 WL 1333285, at *6 (quoting *Palagano*, 2015 WL 5025469, at *3). "In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of the parties and witnesses, would suggest the opposite." *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009). Accordingly, "the existence of a related action in another district is a sound reason for favoring transfer when venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." *Id.*

Here, the cases currently pending before the transferee forum are substantially similar to the actions currently before this Court. Both the Pittsburgh and Chicago securities claims concern the same alleged material misstatements and omissions, as does the ERISA action. (*See* No. 19-307, ECF No. 45; No. 19-1339, ECF No. 179; No. 19-549, ECF No. 29). The same key issues are at the heart of each case: Who said or did what? When? And why? In the Court's estimation, allowing litigation surrounding the same key facts to sprawl across districts would waste the "time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co.*, 364 U.S. at 26.

For instance, the parties in the actions currently pending before this Court all agree that discovery in the Pittsburgh and Chicago actions will need to be coordinated if transfer does not occur. (*See* No. 19-307, Tr. of Telephone Status Conference, ECF No. 41, at 7–8.) In addition, the Defendants raise the possibility that discovery disputes could become problematic if transfer

were not to occur. "If, for example, a dispute arises in connection with discovery that impacts all these cases, absent transfer, would both courts hear that issue?" (No. 19-307, Defs.' Reply in Supp. of Mot. to Transfer Venue, ECF No. 58, at 5–6.) Or, "[i]f a discovery motion was made in the securities cases, and resolved in Chicago in favor of the Defendants, would the plaintiffs be able to seek a second bite at the apple in this Court?" (*Id.*)

In contrast, transfer of the actions currently pending before this Court to the Northern District of Illinois would allow for one (1) federal court to run the show.[6] Regardless of the legal claims at issue, discovery would be simplified, witnesses' time would be conserved, expenses would be reduced, and inconsistent results would certainly be avoided. And that is exactly what § 1404(a) envisioned. And as noted above, the litigation in Chicago had a head start on these cases, and this Court believes that such puts the Chicago Court in the better position to adjudicate what are essentially parallel claims.

As such, the Court finds that the "practical considerations" factor strongly weighs in favor of transferring both actions to the Northern District of Illinois.

### iii. <u>Court Congestion</u>

Next, the Court is to consider "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Based on data provided by the Administrative Office of the U.S. Courts, the Northern District of Illinois appears in some variables to be more congested than the Western District of Pennsylvania, specifically as to weighted civil cases per judge, and time to disposition of civil cases (but not by much as to that factor). By the same token, this Court's vacancy rate has been about 25% to 50% or more higher for about five (5) years, with about 60% more felony criminal cases assigned to each district

---

[6] The Court recognizes that the matter pending before the Delaware Chancery Court will not be joined with the federal actions. However, that is not a sufficient reason for the actions at issue to proceed in more than one (1) federal forum.

judge. *See Combined Civil & Criminal Federal Court Management Statistics* (Dec. 31, 2019), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf. As with many statistical indicators in life, sound arguments can be presented from a number of variables. The Chicago Court is a big, busy federal court. This Court is about half the size, and also quite busy, especially with its criminal docket, which is required to take precedence over the civil matters in the ordinary course.

However, keeping the cases in Pittsburgh will not necessarily lead to overall ease of case administration for either Court. For example, as discussed above, the Pittsburgh and Chicago Courts will need to work together on some level to coordinate discovery if transfer is denied. And, even if discovery is coordinated, individual decisions made by either Court (regarding discovery disputes or other logistical matters) might be undone in all practicality by an opposite ruling from the other Court.

As such, this factor is for the most part a "push," and due to this Court's more expansive criminal docket, generally weighs in favor of transfer. That is also enhanced substantially by the inconvenience compounded by allowing various actions to continue in two (2) different fora, especially when the Chicago cases had a material head start.

### iv. <u>Local Interest</u>

Fourth, the Court is to consider "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Given the fact that Kraft Heinz is co-headquartered in both Pittsburgh and Chicago, and because several of the individual Defendants reside in Chicago and at least one (1) individual Plaintiff resides in Pittsburgh, this factor is neutral.

### v. **Public Policies of the Fora**

Similarly, the public policies of the fora are neutral because both venues have competing interests in that the Defendant Company is co-headquartered in both Districts. Thus, this factor remains neutral.

### vi. **Familiarity with Applicable State Law**

Lastly, the Court is to consider "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879–80. Here, as to the claims that arise under federal law, the familiarity of the respective Districts with state law is not applicable. And as to any state law claims, this Court has no reason believe that there is a "disparity in the qualifications of the federal judges sitting in the two districts to pass on the same [state] law." *Id.* at 883. Thus, this factor remains neutral.

### vii. **Conclusion**

On balance, the Court finds that the public *Jumara* factors weigh meaningfully in favor of transferring both actions to the Northern District of Illinois. Substantially similar litigation is already pending before the transferee forum. That in itself overwhelmingly suggests that the interests of justice would be served via transfer, as discovery would be streamlined, witnesses' time would be saved, and inconsistent results would be avoided.

### 3. *Jumara* **Conclusion**

In sum, of the twelve (12) *Jumara* factors, six (6) weigh in favor of transfer, one (1) weighs against transfer, and five (5) are neutral. Having considered the factors in their totality, the Court finds that the Defendants have demonstrated that the *Jumara* factors weigh strongly in favor of transfer, in that: (1) the claims at issue likely arose in Chicago; (2) the convenience of the parties and witnesses will likely be served by transferring the actions to the Chicago Court;

and (3) substantially similar litigation is already pending before the transferee forum. Those considerations are countered by Plaintiffs' preference that the cases remain in Pittsburgh. In the Court's estimation, however, such considerations do not warrant denial of the Defendants' Motions.

The Court would therefore grant the Defendants' Motions to transfer the cases to the Northern District of Illinois in applying the *Jumara* test.

### C. <u>First-Filed Rule</u>

As noted above, the Third Circuit has adopted the first-filed rule, which also allows a district court to transfer a later-filed action to the district in which the first-filed case is pending, so long as the subject matter of the cases sufficiently overlaps. *See Equal Emp't Opportunity Comm'n*, 850 F.2d at 971 ("[T]he court which first has possession of the subject must decide it.").

Here, while the theories of liability differ across cases, the factual background and subject matter is almost identical. Each case at issue—either in Chicago or Pittsburgh—revolves around the same alleged misstatements and omissions. (*See* No. 19-307, ECF No. 45; No. 19-1339, ECF No. 179; No. 19-549, ECF No. 29). And no party disagrees that the *facts* underlying each action are substantially similar. In fact, the parties stipulated to such:

> Plaintiffs in the Derivative Action seek to recover the extensive costs the Company has expended (and is continuing to expend) undertaking the restatement, the extensive internal investigations, and responding to the SEC investigation. Additionally, the Company has been named as a defendant in a class action lawsuit for alleged violations of the federal securities laws pending in the Northern District of Illinois ("Securities Action"). The ERISA Plaintiffs allege breaches of fiduciary duties under ERISA based on a similar set of underlying facts.

*See* No. 19-307, Joint Status Report, ECF No. 40, at 4.

What is at dispute, according to the Plaintiffs, is that even though the factual circumstances are the same, the legal claims at issue and the parties involved differ from case to case.[7] (No. 19-307, ECF No. 56, at 11–12; No. 19-549, ECF No. 38, at 3–5.) However, as outlined above, a flexible analysis of the first-filed rule directs district courts to consider whether or not "the subject matter of the later filed case substantially overlaps with that of the earlier one"—not the parties or the legal claims for relief. *Emps.' Ret. Sys. of City of St. Petersburgh, Fla.*, 2019 WL 5485549, at \*3–4.

And, in the Court's estimation, exceptional circumstances do not suggest that the Court should refrain from applying the first-filed rule. Forum shopping is not a concern because the Defendants did not file any of the actions at issue. *See Equal Emp't Opportunity Comm'n*, 850 F.2d at 978 (noting that the forum shopping exception only applies when a plaintiff shows that a defendant in the second action filed the first action to avoid the second forum). There has been no showing of bad faith on behalf of the Defendants. And the substance of the actions before this Court have not progressed beyond that of the actions before the Northern District of Illinois, in that this Court has not yet addressed the merits of the actions currently pending before it.[8] *See, e.g.*, *Auto. Serv. Ass'n of N.J., Inc. v. Rockland Exposition, Inc.*, No. 08-3186, 2008 WL 5244282, at \*5 (D.N.J. Dec. 12, 2008) (declining to extend the first-filed rule where the court in

---

[7] The derivative Plaintiffs also argue that the first-filed action was actually *DeFabiis* because that was the first shareholder derivative suit to be filed. (No. 19-549, ECF No. 38, at 3.) However, that case was voluntarily dismissed, refiled in the Southern District of New York, voluntarily dismissed again, and then refiled in the Delaware Chancery Court. So, in the Court's estimation, the Chicago securities actions are the only earlier-filed actions that the Pittsburgh cases could be joined with. Ultimately, the purpose of the first-filed rule is to conserve time and resources when possible. And transfer of the Pittsburgh cases to the Northern District of Illinois will do just that.

[8] By the same token, the actions pending before the Chicago Court have not progressed substantially beyond that of those pending before this Court. So far, the Chicago Court has consolidated cases and appointed lead counsel. (No. 19-1339, ECF No. 150.) The parties filed an Amended Complaint on January 6, 2020. (No. 19-1339, ECF No. 179.) And two (2) Motions to Dismiss were filed on March 6, 2020, which remain pending. (ECF Nos. 215, 217.) As such, transfer of the cases currently pending before this Court to the Northern District of Illinois would not be fruitless—the Chicago Court will remain the sole arbiter as to all material issues in what are essentially parallel claims.

the later-filed action had already denied a motion for a preliminary injunction and a motion to dismiss or transfer the action).

Therefore, the Court finds that transfer of the actions at No. 19-307 and No. 19-549 is also appropriate under the Third Circuit's first-filed rule.

## IV.  **CONCLUSION**

Based on the foregoing, the Court finds that the Defendants have met their burden of proving that venue is proper in the Northern District of Illinois, that private and public interests at stake will be served by transferring the actions, and that the Third Circuit's first-filed rule similarly warrants transfer of both actions. Accordingly, the actions at No. 19-307 and No. 19-549 shall be transferred to the Northern District of Illinois.[9]

An appropriate Order will follow.


s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge


Dated:  April 9, 2020

cc:      All counsel of record

---

[9] A Motion to Appoint Lead Counsel was filed in the action at No. 19-433 on June 14, 2019. (No. 19-433, ECF No. 35.) That action, however, has since been voluntarily dismissed and was de-consolidated from the matters pending at No. 19-549. (No. 19-549, Order, ECF No. 20.) As such, the Court no longer views the Motion at No. 19-433, ECF No. 35 to be "live," but to the extent that it is, any such Motion is dismissed without prejudice, in that the transferee Court is the appropriate forum to consider such Motion now that all (federal) actions revolving around the alleged misstatements and/or omissions are pending before that Court.